IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                    No. 3:13-cr-30125-DRH-11

ANTOINE JENKINS,

        DEFENDANT.

### MEMORANDUM AND ORDER

Pending before the Court is defendant Antoine Jenkins' ("Jenkins") motion to suppress search (Doc. 222). The Government has responded (Doc. 250). Upon review of the briefs, the Court determined that an evidentiary hearing was unnecessary as there do not appear to be any disputed issues of material fact (Doc. 253). For the following reasons, defendant's motion is **DENIED in part** and **GRANTED in part**.

### I.    Background

On January 28, 2012, as a part of a DEA investigation into a drug trafficking conspiracy, the DEA received several Title III interceptions over a phone used by co-defendant Tyrone Carraway ("Carraway") indicating that he and co-defendant Richard Graham were going to a barbershop to purchase cocaine. Approximately an hour after meeting at the barbershop, interceptions indicated that Jenkins wanted to meet up with Carraway. Carraway called him a short time later, told him to "come this way" and then met with Jenkins in a parking lot. DEA task Force officer called Illinois State Police Officer Jarrod Leckrone

("Leckrone") and asked Officer Leckrone to pull over Jenkins' car, a black Yukon, after he left the meeting in the parking lot.

The following facts are from Officer Leckrone's report as provided by defendant (Doc. 222 at 1-2). Officer Leckrone observed the black Yukon and noted that it had illegally tinted side windows and its temporary registration was partially falling off the vehicle. Officer Leckrone also saw that the driver was not wearing a seat belt. Officer Leckrone then pulled over the car and indicated to Jenkins that the above were the reasons for the stop. When Officer Leckrone pulled over Jenkins, he had no ID but identified himself. Jenkins also appeared extremely nervous, had difficulty talking, and his answers to questions did not make sense. As he moved closer to the vehicle, Officer Leckrone smelled an odor of burnt cannabis. Jenkins denied having anything illegal in the vehicle. Officer Leckrone had defendant step out of the vehicle. He then searched Jenkins and the car. He found several cell phones and a baggie containing cocaine in a plastic compartment under the dash. Defendant was then placed in handcuffs.

According to the Government, upon arrival at the police station, DEA SA McKnight took custody of the cocaine and examined the phones. He identified telephone number 618-799-4062 from one of the phones. He also observed a recent call in the phone "'TY' 314-750-4828."

TFO Shane Drazic and Officer Leckrone gave Jenkins his *Miranda* rights. Defendant said the truck belonged to his cousin and he did not know anything about the cocaine. He refused to provide any further information.

Defendant moves to suppress (Doc. 222) the evidence obtained as a result of the illegal search of Jenkins' car without a warrant. Defendant asserts that as a search incident to arrest, the police officer only had the authority to search defendant's person once the arrestee had been secured. Further, he argues that any post-arrest statements must also be suppressed as fruit of the poisonous tree. Finally, he asserts that any evidence resulting from the search of any cellular telephones seized by law enforcement officials should be suppressed as the Government did not have a warrant.

The Government responded (Doc. 250). The Government first asserts that the motion is untimely. In the alternative, the Government addresses the merits of the motion. Specifically the Government argues that the officer had probable cause to search the vehicle under one of three possible theories: the collective knowledge doctrine, the probable cause he established, or the inevitable discovery doctrine. Additionally, the Government asserts that any statements would be admissible as defendant was read his *Miranda* warnings. Finally, the Government argues that the cell phone number and any numbers in the call log were properly obtained.

## II. Analysis

### A. Timeliness

Defendant "waives any Rule 12(b)(3) defense, objection or request not raised by the deadline the court sets under Rule 12(c)." Fed. R. Crim. P. 12(e). "However the district court may, for good cause, grant relief from the waiver."

*United States v. Salahuddin*, 509 F.3d 858, 860 (7th Cir. 2007) (internal citations and quotations omitted). "The pretrial motions requirement embodied in Rule 12 serves an important social policy and not a narrow, finicky procedural requirement . . . ." *Id.* at 862. "Unique circumstances" are required to overcome the pretrial motion requirement. *Id.* at 860 (finding unique circumstances when the failure to file was due in large part to mutual misapprehension as to facts underlying juvenile conviction and neither the speed and efficiency of judicial process nor the fairness to Government appeared to be at stake). The Seventh Circuit reviews the District Court's decision for clear error. *Id.* at 860.

The Court finds good cause in this instance to grant relief from the waiver. The Court entered the order regarding pretrial discovery and motion practice on July 11, 2013 (Doc. 95). The order specifically states in section 5 that any motion to suppress shall be filed within 21 days of the arraignment (Doc. 95 at 2). Defendant was arraigned and appointed CJA attorney Turner Rouse that same day (Docs. 92, 125). Twenty-one days from the arraignment was August 1, 2013. Therefore, the motion is technically untimely. However, defendant filed a pro se motion for appointment of new attorney on April 2, 2014, indicating in the motion, and subsequent hearing, several concerns with his counsel, Mr. Rouse (Docs. 196, 209). Upon resolving the matter and denying the motion for appointment of new counsel, the Court granted defendant's oral motion for additional time to file pre-trial motions but also granted the Government leave to object (Doc. 209). While the Government's objections have been noted, the Court

finds that the defendant's specific concerns regarding his counsel warrant good cause for the untimely motion.

**B. Vehicle Search and Subsequent Statements**

Warrantless searches are per se unreasonable under the Fourth Amendment absent an approved warrant exception. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). "A defendant who seeks to suppress evidence bears the burden of making a prima facie showing of illegality." *United States v. Randle*, 966 F.3d 1209, 1212 (7th Cir. 1992). Defendant is correct in his assertion that the search of the vehicle does not fall into the search incident to arrest exception. *See Gant*, 556 U.S. at 351 ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of the arrest.") However, the Court finds that the search is valid under the collective knowledge doctrine and alternatively because Officer Leckrone had established independent probable cause and because normal police investigation would have inevitably led to the discovery of the evidence.

The Court must undertake a two-part analysis to determine whether Officer Leckrone had sufficient probable cause based on the DEA's information: (1) did the DEA agents have sufficient probable cause to search the vehicle and (2) does the collective knowledge doctrine apply to this situation. The Court finds that the DEA had sufficient probable cause to search the vehicle. Under the automobile

exception, law enforcement is allowed to conduct a warrantless search "if there is probable cause to believe the vehicle contains contraband or evidence of a crime." *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010). "Probable cause to search exists where, based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *Id.*

The facts known to the DEA task force supported a search of the vehicle. Specifically from the Title III wiretaps and associated surveillance, agents were aware that two individuals in possession of cocaine, Caraway and Graham, went to meet Jenkins a short while after taking possession of the drugs in a parking lot. A reasonably prudent person would believe, given the facts and circumstances, that Jenkins had met Caraway and Graham to pick up narcotics and had the narcotics in the vehicle.

The Court further finds that the collective knowledge doctrine applies in this case. "The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *Id.* at 252. The collective knowledge doctrine applies if: "1) the officer taking the action must act in objective reliance on the information received, (2) the officer providing the information—or the agency for which he works—must have facts supporting the level of suspicion required, and (3) the stop must be no more intrusive than

would have been permissible for the officer requesting it." *Id.* The Seventh Circuit case law is clear, when DEA agents ask local law enforcement to stop a vehicle, the DEA's collective knowledge can be imputed to the officers under the collective knowledge doctrine. *Id.* Therefore, the Court concludes that Officer Leckrone had sufficient probable cause under the collective knowledge doctrine to search the vehicle.

In the alternative, the Court finds that the search is valid because Officer Leckrone had established independent probable cause. "A police officer who smells marijuana coming from a car has probable cause to search that car." *United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008). Officer Leckrone indicates in his police report, "I moved closer to his vehicle and could smell an odor of burnt cannabis" (Doc. 222 at 2). While defendant may assert that the stop was pretextual, the Supreme Court has made it clear that "it would not entertain arguments based on the 'real' motivations behind otherwise lawful traffic stops." *Franklin*, 547 F.3d at 733 (citing *Arkansas v. Sullivan*, 532 U.S. 769 (2001)). Officer Leckrone lawfully stopped the defendant for illegally tinted windows, temporary registration that was partially falling off the vehicle, and for not wearing a seatbelt.

Finally, the search is also reasonable under the inevitable discovery doctrine. "The 'inevitable discovery doctrine' holds that even an illegally seized item need not be suppressed if the government can prove by a preponderance of the evidence that the officers would have discovered it by lawful means." *United*

*States v. Stotler*, 591 F.3d 935, 940 (7th Cir. 2010). The doctrine requires a two part showing from the Government: 1) that it "had or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence" and 2) that it "would have conducted a lawful search absent the challenged conduct." *United States v. Marrocco*, 578 F.3d 627, 637-38 (7th Cir. 2009). The Court finds that the Government has met its required showing. The Government asserts that if defendant had not been arrested for the drug possession, defendant would have been arrested for driving on a suspended license and his vehicle would have been towed and subjected to an inventory search. *See Colorado v. Bertine*, 479 U.S. 367, 372 (1987) (find that in the absence of a showing that a search was done in bad faith or for the sole purpose of an investigation, evidence discovered during an inventory search was admissible). Therefore, the Court concludes that the vehicle search was lawful. Accordingly, defendant's subsequent statements need not be suppressed as fruit of the poisonous tree.

**C. Cell Phone Search**

At the time the parties briefed the motion to suppress, two companion cases were pending before the Supreme Court addressing whether the police may, without a warrant, search digital information on a cell phone seized from an individual who has been arrested, *United States v. Wurie,* 728 F.3d 1 (1st Cir. 2013), *cert. granted*, 82 U.S.L.W. 3104 (U.S. Jan. 17, 2014) (No. 13-212); *People v. Riley*, D059840, 2013 WL 475242 (Cal. Ct. App. Feb. 8, 2013), *cert. granted in*

*part*, 82 U.S.L.W. 3082 (U.S. Jan. 17, 2014) (No. 13-132). As the Court was in the process of writing this order, the Supreme Court issued its opinion on the issue. *Riley v. California*, Nos. 13-132, 13-212, 2014 WL 2864483 (2014). The Supreme Court's edict is clear: Officers must generally secure a warrant before searching data on a cell phone seized from an individual who has been arrested. *Id.* at *9. The Supreme Court indicated that the officers "may be able to rely on exigent circumstances to search the phone immediately" but only "[i]f the police are truly confronted with a 'now or never' situation — for example, circumstances suggesting that a defendant's phone will be the target of an imminent remote-wipe attempt." *Id.* *12 (internal citations and quotations omitted). The Court finds no exigent circumstances in this case and, therefore, concludes that any evidence retrieved from the defendant's cell phones must be suppressed.

### III. Conclusion

Accordingly, defendant's motion to suppress (Doc. 222) is **DENIED in part** and **GRANTED in part.**

**IT IS SO ORDERED.**
Signed this 30th day of June, 2014.

Digitally signed by David R. Herndon
Date: 2014.06.30 14:05:39 -05'00'

**Chief Judge**
**United States District Court**